### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GOVERNMENT EMPLOYEES
INSURANCE COMPANY, GEICO
GENERAL INSURANCE COMPANY,
GEICO CASUALTY COMPANY and
GEICO INDEMNITY COMPANY,**

        **Plaintiffs,**

**v.**                                **Case No:  6:12-cv-1138-Orl-36DAB**

**KJ CHIROPRACTIC CENTER LLC,
WELLNESS PAIN & REHAB, INC.,
SADAT SMITH, ARTHUR VITO,
ESDRAS PIERRE LOUIS, JEAN
CASSAMAJOR, ROBERT COHEN,
ORLENE JOSEPH, EDNER DESIR,
ELAINE FELIX, VLADIMIR JEAN
PIERRE, ROBERT THELUSMA,
SHENIKA RICHARDSON, SHAYLA
GAINES, CHANEL AKINS, QUEENA
MCRAE, JEAN DORESTANT and
BELLE MANAGEMENT, LLC,**

        **Defendants.**

---

### <u>ORDER</u>

    This cause comes before the Court on the Report and Recommendation of Magistrate

Judge David A. Baker (Doc. 228), entered on October 23, 2013.   In the Report and

Recommendation, Magistrate Judge Baker recommends that the motions to dismiss the Second

Amended Complaint ("Motions to Dismiss"), filed separately by Defendants KJ Chiropractic

Center, LLC ("KJ Chiropractic"), Sadat Smith ("Smith"), Orlene Joseph ("Joseph"), Arthur Vito

("Vito") and Wellness Pain & Rehab, Inc. ("Wellness"), and Robert Thelusma ("Thelusma")

(Docs. 204–07, 209) be granted as to the declaratory judgment count and denied in all other

respects.   Doc. 228 at 17.   Magistrate Judge Baker also recommends that Joseph's Motion for

Rule 11 Sanctions ("Motion for Sanctions") (Doc. 208) be denied.  Doc. 228 at 20.  Smith filed

an Objection to the Report and Recommendation (Doc. 231) which was adopted by Vito and

Thelusma[1] (Docs. 232, 234), and Joseph filed a separate Objection (Doc. 233); Plaintiffs

responded to the Objections (Doc. 235).  As such, this matter is ripe for review.

## I.    BACKGROUND

### A.    Statement of Facts[2]

This action arises out of an alleged insurance fraud ring operating in Orlando, Florida

involving two chiropractic clinics—KJ Chiropractic and Wellness (collectively, the "Clinics")—

and the clinic operators, chiropractors, patients, and accident organizers known as "Runners".

Doc. 187 at ¶¶ 2–3, 5.  Plaintiffs are affiliated insurance companies (collectively, "GEICO") that

allege that during a period from 2009 through at least 2012, Smith, Vito, Joseph, Thelusma, and

others acted in concert with the Clinics to defraud GEICO by submitting fraudulent Personal

Injury Protection ("PIP") claims via the U.S. Mail and collecting money to which they were not

lawfully entitled.  *Id.* ¶¶ 4, 29.  GEICO alleges that the fraudulent PIP claims arose out of:  (1)

staged accidents; (2) real accidents wherein claimants received treatment at the Clinics even

though they were not truly injured; or (3) real accidents wherein claimants incurred some

injuries, but received treatment at the Clinics that was pre-programmed, unnecessary, excessive,

and unlawful.  *Id.* ¶ 6.  GEICO further alleges that Defendants promoted their fraudulent

---

[1] The document filed by Thelusma appears to be identical to the document filed by Vito, and in fact purports to be "Defendant Vito's Notice to Adopt Co-Defendant Sadat Smith's Objection to Magistrate Judge's Report and Recommendation."  *See* Doc. 234.  However, as the docket sheet reveals that the document was filed by Thelusma's counsel, the Court assumes that the references to Vito were in error and construes the document as Thelusma's notice of adopting Smith's Objection.

[2] The following statement of facts is derived from the Second Amended Complaint (Doc. 187), the allegations of which the Court must accept as true in ruling on the instant Motions to Dismiss.  *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992).

enterprise by offering money to anyone who referred accident victims to the Clinics, offering cash directly to patients who agreed to accept unnecessary chiropractic treatment, and dispensing treatment in a manner designed to maximize profits, rather than heal patients. *Id.* ¶ 8.

With respect to the staged accidents, GEICO alleges that the Clinics would pay the Runners to recruit third parties to participate. *Id.* ¶ 9, 18. In advance of each staged accident, the Runners would instruct the third parties on how to obtain appropriate automobile insurance from Florida carriers, including GEICO. *Id.* ¶ 12. Once the automobile insurance was in place, the Runners would physically escort the third parties to the location they had selected for the staged accident. *Id.* ¶ 13. After ramming the vehicles, the Runners instructed the third parties to call the police in order to document the event, thus making the crash appear to be real. *Id.* ¶ 14. The Runners further coached the staged crash participants to claim neck and/or back injuries so they could present, and profit from, false PIP, bodily injury and, in some cases, property damage claims. *Id.* ¶ 15. The Runners then directed the PIP claimants to KJ Chiropractic and/or Wellness. *Id.* ¶ 16. The Runners informed the claimants that if they agreed to accept at least 15 days of unnecessary treatment, the Clinics would pay them a secret cash kickback between $500 and $1,000. *Id.* ¶ 17. The PIP claimants were also told they could make money by presenting fake bodily injury claims. *Id.*

Public filings with the State of Florida indicate that Smith was the president and sole owner of KJ Chiropractic, while Vito was the president and sole owner of Wellness. *Id.* ¶ 19. Both Smith and Vito were licensed chiropractors. *Id.* ¶ 23. GEICO alleges that Smith and Vito, although technically the owners, granted control of the respective Clinics to clinic operators who lacked chiropractic licenses or training, in violation of Florida licensing requirements. *Id.* ¶¶ 20–

23, 219–26.  GEICO further alleges that Smith and Vito knew of, and profited from, the unlawful

activities at the Clinics, adopting attitudes of willful blindness.  *Id.* ¶¶ 24–26, 732–36, 742–46.

Specifically, Smith relinquished *de facto* control of KJ Chiropractic to Defendant Jean

Dorestant ("Dorestant") and Joseph.  *Id.* ¶ 21.  Dorestant and Joseph acted as office managers of

KJ Chiropractic during the relevant time period.  *Id.* ¶¶ 88, 113.  Smith signed a Marketing,

Management and Operations Service Agreement with Defendant Belle Management, LLC

("Belle Management"), a separate company owned by Dorestant, allowing Belle Management to

supervise and coordinate the daily activities of KJ Chiropractic.  *Id.* ¶¶ 72, 75–76, 231.  While

Smith retained authority over all major business decisions, he delegated certain business-related

tasks to Dorestant and Belle Management.  *Id.* ¶¶ 80–81.  Smith additionally gave Dorestant a

key to KJ Chiropractic's office.  Doc. 187 at ¶ 93.

Joseph knew of the fraud occurring at KJ Chiropractic, according to the testimony of

Defendant Pierre Louis ("Louis").  *Id.* ¶ 405.  At one point, when Dr. Glenn Behrman, a

chiropractor at KJ Chiropractic, mentioned to Joseph that his name was being used in bills for

chiropractic treatment on days that he had not worked, Joseph replied that changing the bills

would be a lot of trouble.  *Id.* ¶¶ 82, 84, 125–31.  After Dr. Behrman continued to complain

when this practice continued, he was terminated from his employment.  *Id.* ¶ 131.  Moreover,

Joseph was the registered agent and manager of Jason Auto Sales, LLC ("Jason Auto Sales"),

from which multiple automobiles used in the staged accidents had been purchased, and she

signed the titles for vehicles purchased from Jason Auto Sales.  *Id.* ¶¶ 534, 558–59.

Vito, meanwhile, relinquished *de facto* control of Wellness to Thelusma and Defendants

Elaine Felix ("Felix") and Edner Desir ("Desir").  *Id.* ¶ 22.  Thelusma, in addition to working

with Vito to establish Wellness, entered a lease for the property used by Wellness, knew that the

Runners were staging crashes in order to refer patients there, authorized and paid the Runners to bring patients to Wellness, and profited from Wellness's business operations. *Id.* ¶¶ 146, 151, 170–72. Vito and Thelusma set the prices charged by Wellness for treatments, established procedures for documenting treatment, and created invoices. *Id.* ¶¶ 161–62, 168–69.

### B.    Procedural History

On July 23, 2012, GEICO filed a Complaint in this Court asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, as well as state law claims for violations of the Florida RICO Act and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), civil conspiracy, common law fraud, tortious interference with contractual relationships, tortious interference with advantageous business relationships, and unjust enrichment. *See* Doc. 1. On November 16, 2012, the Court entered an Order dismissing the Complaint as a shotgun pleading and granting GEICO leave to file an Amended Complaint. *See* Doc. 108. On December 15, 2012, GEICO filed an Amended Complaint, following which several Defendants moved to dismiss the Amended Complaint. *See* Docs. 112, 122–25. During the pendency of these motions, GEICO sought leave to file a Second Amended Complaint. *See* Doc. 157. After Magistrate Judge Baker held argument, he submitted a Report and Recommendation recommending that GEICO be allowed to file the amended pleading and that GEICO file a "RICO Case Statement" in conjunction therewith, setting forth its RICO claims with specificity. *See* Docs. 174–75. This Court adopted Magistrate Judge Baker's recommendations in full. *See* Doc. 179.

On July 12, 2013, GEICO filed the Second Amended Complaint and accompanying Civil RICO Case Statement, as well as numerous charts and other exhibits detailing the alleged fraudulent scheme. *See* Docs. 187–88. The Second Amended Complaint asserts claims under

RICO and FDUTPA, as well as common law claims for fraud, civil conspiracy, and unjust enrichment. *See* Doc. 187. GEICO also seeks declaratory relief. *Id.* at ¶¶ 915–36.

## II.      LEGAL STANDAR

Federal Rule of Civil Procedure 72(b)(2) provides, in pertinent part, that "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge. When a party makes a timely and specific objection to a magistrate judge's Report and Recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which [the] objection is made." 28 U.S.C. § 636(b)(1)(C); *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990). The district judge may accept, reject, or modify in whole or in part the Report and Recommendation of the magistrate judge. Fed. R. Civ. P. 72(b)(3). The district judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id.*

## III.     DISCUSSION

### A.      Rule 8(a)

In their Objections to the Report and Recommendation, Smith, Vito, and Thelusma (the "Smith Objectors")[3] argue that the Magistrate Judge should have concluded that GEICO failed to meet the "short and plain" requirements of Rule 8(a). Doc. 231 at 3–4. The Smith Objectors focus on the length of the Second Amended Complaint, asserting that GEICO is "long-winded" and makes conclusory allegations. *Id.*

The Second Amended Complaint, at 143 pages with hundreds of pages of exhibits, is indeed lengthy with some redundancies. However, as the Report and Recommendation notes,

---

[3] As Vito and Thelusma have merely adopted Smith's Objections, the Court refers to Smith, Vito, and Thelusma collectively as the "Smith Objectors" and cites only to Smith's Objections in discussing the Objections of all three Defendants. *See* Docs. 231–32, 234.

this is a complex case involving many Defendants and numerous claims, all of which must be set forth sufficiently to meet the appropriate pleading standards, including the heightened pleading standard for fraud under Rule 9(b).   Accordingly, it is reasonable to expect such a lengthy pleading in this case.   Moreover, a complaint that is minimally sufficient to satisfy the federal pleading standards should not be dismissed for mere surplusage.   *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 603 (11th Cir. 2008); *Athens Newspapers, Inc. v. Jefferson Standard Life Ins. Co.*, 729 F.2d 1412, 1417 (11th Cir. 1984).   Here, GEICO has set forth its allegations in numbered paragraphs, supporting each of its claims with sufficient factual allegations to state plausible claims for relief.   *See* Doc. 187.   As such, the Court agrees with the Magistrate Judge that GEICO's claims are sufficiently pled under Rule 8(a).

## B.    Rule 9(b)

The Smith Objectors and Joseph assert that the Magistrate Judge erred in concluding that the fraud and RICO claims satisfied the heightened pleading standard of Rule 9(b).   *See* Doc. 231 at 4–5; Doc. 233 at 4–6.   Rule 9(b) requires that "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud."   Fed. R. Civ. P. 9(b).   In addition, the Eleventh Circuit has held that RICO claims predicated, as here, on mail fraud "are essentially a certain breed of fraud claims" and must also be pled with particularity under Rule 9(b). *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).   As such, with respect to its RICO and fraud claims, GEICO is required to allege:   "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled [GEICO]; and (4) what the defendants gained by the alleged fraud."   *Am. Dental Ass'n*, 605 F.3d at 1291 (internal quotations and citations omitted).   Where multiple defendants are involved, the complaint must

contain sufficient, specific allegations with respect to each defendant rather than lumping all defendants together. *Ambrosia Coal*, 482 F.3d at 1317.

Upon review and taken in the light most favorable to GEICO, the allegations of the Second Amended Complaint satisfy the heightened pleading standard of Rule 9(b). Although GEICO has lumped the Defendants together in certain portions of the Second Amended Complaint, this does not negate the fact that GEICO has still alleged specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme. As to Smith and Vito, GEICO alleges that they were "sham clinic owners," voluntarily granted control of the Clinics to clinic operators who they knew had no medical training or licensing, and loaned their names and chiropractic licenses so that the Clinics would appear to be legitimate and in compliance with Florida's Health Care Clinic Act. Doc. 187 at ¶¶ 20, 23. GEICO further alleges that both Smith and Vito knew that the Clinic employees were rendering unlawful and/or cookie-cutter treatment to patients, and adopted attitudes of willful blindness. *Id.* ¶¶ 24–25.

As to Smith, specifically, GEICO alleges that Smith, on behalf of KJ Chiropractic, signed a Marketing, Management and Operations Service Agreement with Belle Management, wherein Smith relinquished true ownership and control of KJ Chiropractic to Dorestant. *Id.* ¶¶ 72–73, 76. The Second Amended Complaint further alleges that Smith testified under oath that he "controlled everything clinically" and made all "major" decisions at KJ Chiropractic, but that he delegated certain business-related tasks to Dorestant and Belle Management. *Id.* ¶¶ 80–81. GEICO alleges that Smith gave a key to KJ Chiropractic's office to Dorestant and hired Joseph. *Id.* ¶¶ 92–93, 95. Additionally, GEICO alleges that Dr. Behrman discovered that his name was being used on bills for medical treatment for days that he was not present at the Clinic and for treatments that he had not supervised. *Id.* ¶ 125. When his objections were brought to the

attention of Joseph, she directed Dr. Behrman to Smith, who seemingly wanted to continue the practice, and asked if a signature stamp could be used for future bills. *Id.* ¶¶ 126–28. Viewing the allegations favorably to GEICO and making reasonable inferences therefrom, the conduct alleged in the Second Amended Complaint is more than sufficient to inform Smith of the nature of his alleged participation in the fraud scheme and how he benefited from that scheme.

As to Vito, GEICO alleges that Vito was the registered agent, incorporator, and only officer for Wellness, and worked together with Thelusma, Felix, and Desir in operating Wellness. *Id.* ¶¶ 144, 151. GEICO further alleges that Vito was actively employed by Wellness as a chiropractor from approximately July 2009 through November 2011, during which time the staged accidents occurred and the fraudulent medical records and bills were submitted. *Id.* ¶¶ 4, 152–53. Additionally, the Second Amended Complaint includes allegations that Vito set the prices charged by Wellness, established procedures used by Wellness to document treatment, and caused money to be paid to numerous other Defendants. *Id.* ¶¶ 161–63. Viewing the allegations favorably to GEICO and making reasonable inferences therefrom, the conduct alleged in the Second Amended Complaint is sufficient to inform Vito of the nature of his alleged participation in the fraud scheme and how he benefited from that scheme.

As to Thelusma, in addition to the allegations that he worked together with Vito, Felix, and Desir in establishing and operating Wellness, GEICO alleges that Thelusma entered into a lease agreement for the property used by Wellness. *Id.* ¶¶ 145–46, 151. GEICO further alleges that Thelusma hired, trained, and supervised employees of Wellness and established procedures used by Wellness to document treatment. *Id.* ¶¶ 166, 169. The Second Amended Complaint includes allegations that Thelusma knew that Dorestant, Louis, Jean Cassamajor, and Vladimir "Rico" Jean Pierre were staging crashes in order to refer patients to Wellness, that he authorized

said Runners to bring patients to Wellness on a regular basis, and that he caused money to be paid to the Runners.  *Id.* ¶¶ 171–73.  Again, viewing the allegations favorably to GEICO and making reasonable inferences therefrom, the conduct alleged in the Second Amended Complaint is sufficient to inform Thelusma of the nature of his alleged participation in the fraudulent scheme and how he benefited from that scheme.

As to Joseph, the Second Amended Complaint specifically alleges that she controlled the internal operations of KJ Chiropractic and worked as office manager from 2009 through 2012, even though she was not a licensed health care practitioner.  Doc. 187 at ¶¶ 21, 50, 88, 232.  The Second Amended Complaint alleges that Joseph hired Dr. Behrman, who discovered that his name appeared on medical bills for treatment that had been performed when he was not present. *Id.* ¶¶ 97, 125.  When Dr. Behrman brought this to the attention of Joseph, she referred him to Smith, and stated that it would be a lot of trouble to go back and change bills that had already listed Dr. Behrman's name.  *Id.* ¶¶ 126, 129.  The Second Amended Complaint further alleges that Louis testified as to Joseph's knowledge of the fraud occurring at KJ Chiropractic.  *Id.* ¶ 405.  Additionally, Joseph was the registered agent and manager of Jason Auto Sales, from which multiple vehicles used in the staged accidents had been purchased, and she had signed the titles for those vehicles.  *Id.* ¶¶ 534, 559.  Viewing the allegations favorably to GEICO and taking reasonable inferences therefrom, the conduct alleged in the Second Amended Complaint is sufficient to inform Joseph of the nature of her participation in the fraudulent scheme and how she benefited from that scheme.

Importantly, GEICO is not required to *prove* its allegations at this point in the litigation; it is merely required to meet the pleading standards.  For the reasons set forth above, the Court

agrees with the Magistrate Judge that GEICO has pled its RICO and fraud claims with sufficient particularity under Rule 9(b).[4]

### C.    RICO Conspiracy and Civil Conspiracy

The Smith Objectors assert that the Magistrate Judge erred in concluding that GEICO adequately pled a RICO conspiracy under 18 U.S.C. § 1962(d) and a civil conspiracy under Florida law.  Doc. 231 at 5–7.  Specifically, they argue that GEICO has failed to properly allege that they entered into an agreement with any other Defendants to conspire against GEICO and that the allegations in the Complaint do not support any such inference.  *Id.* at 6.

The RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  § 1962(d), in turn, makes it "unlawful for any person to *conspire* to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(c) (emphasis added).  A RICO conspiracy claim under § 1962(d) can be established in one of two ways: "(1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts."  *Am. Dental Ass'n*, 605 F.3d at 1293 (internal citations and quotations omitted).  However, a plaintiff is not required to offer direct evidence of

---

[4] In addition to the specific allegations outlined above, GEICO has incorporated exhibits detailing more of the "who, what, when, and where" of the alleged scheme, including specific claim numbers, dates of loss, which clinic submitted bills, amounts paid by GEICO, as well as type of fraud, date of mailing/wire, specific misrepresentations made, and parties who submitted the documents.  *See* Docs. 187-1, 187-2.  Read together, the Second Amended Complaint and its exhibits are sufficient to meet the Rule 9(b) particularity requirements as to the nature of Defendants' participation in the alleged fraud.  *See State Farm Mut. Auto Ins. Co. v. Kugler*, No. 11-80051, 2011 WL 4389915, at *4 (S.D. Fla. Sept. 21, 2011) (finding that the plaintiff insurance company's complaint, in conjunction with an attached claim chart, were sufficient to satisfy the pleading requirements of Rule 9(b) for RICO claims).

such an agreement, as "the existence of a conspiracy may be inferred from the conduct of the participants." *Id.* (internal citations and quotations omitted).  A claim for civil conspiracy under Florida law similarly requires the plaintiff to allege an agreement between two or more parties. *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) ("[T]o state a claim for civil conspiracy, [the plaintiff] must allege: '(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'") (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So.2d 1157, 1159–60 (Fla. 3d Dist. Ct. App. 2008)).

For the reasons discussed in Part III.B, *supra*, the Court has no trouble concluding that the allegations of the Second Amended Complaint, viewed in the light most favorable to GEICO and drawing all reasonable inferences therefrom, are sufficient to raise a plausible inference of an agreement among Defendants based on their alleged conduct.  Therefore, Defendants' attempts to dismiss the RICO conspiracy and civil conspiracy counts on this ground are without merit.

### D.    Unjust Enrichment

The Smith Objectors next object to the Magistrate Judge's conclusion that GEICO properly stated a claim for unjust enrichment.  Doc. 231 at 7.  Under Florida law, a claim for unjust enrichment includes the following elements:  (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying for it.  *Kahama VI, LLC v. HJH, LLC*, No. 8:11-cv-2029, 2013 WL 5177843, at *5 (M.D. Fla. Sept. 12, 2013) (citing *Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th Dist. Ct. App. 1994)).  The Smith Objectors specifically

argue that the Second Amended Complaint fails to address how they personally accepted or retained any benefit conferred by GEICO. Doc. 231 at 7. However, the Court has already concluded that the Second Amended Complaint adequately alleges that each Defendant benefited from the fraudulent scheme. *See supra*, Part III.B. Accordingly, this objection is without merit.

### E. Rule 19

Finally, the Smith Objectors contend that the Magistrate Judge erred in failing to recommend that the Second Amended Complaint be dismissed for failure to join all required parties under Rule 19.[5] Doc. 231 at 7–8. The Smith Objectors maintain that the 37 individuals

---

[5] Rule 19 provides, in pertinent part:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

. . .

(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

listed in the Second Amended Complaint as insureds who were allegedly involved in the fraudulent scheme are necessary parties who must be joined in the action.  *Id.* at 8.

The Eleventh Circuit follows a two-part test in determining whether a party is indispensable under Rule 19.  *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279 (11th Cir. 2003) (internal citations and quotations omitted).  First, the court must determine whether, under Rule 19(a), the person in question is one who should be joined if feasible.  *Id.* at 1280 (internal citations and quotations omitted).  In making this determination, "pragmatic concerns, especially the effect on the parties and the litigation, control."  *Id.* (internal citations and quotations omitted).  Second, "[i]f the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction), then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue."  *Id.* (internal citations and quotations omitted).

The Smith Objectors argue that the unnamed insureds were "key players," and that the alleged fraudulent scheme could not have unfolded without the existence of their insurance policies.  Doc. 231 at 8.  However, assuming that the unnamed insureds were active participants in the fraudulent scheme, their presence is not "critical to the disposition of important issues in

---

(2) the extent to which any prejudice could be lessened or avoided by:

    (A) protective provisions in the judgment;

    (B) shaping the relief; or

    (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

 (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

the litigation." *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999) (internal quotations and citation omitted).  As noted by the Magistrate Judge, GEICO's claims target the Clinics and the *operators* of the scheme, and thus resolution of any claims that GEICO may have against the insureds is not necessary at this time.  Indeed, while the unnamed insureds may be joint tortfeasors in the fraudulent scheme, the Supreme Court has observed that, notwithstanding Rule 19, "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990); *see also* Fed. R. Civ. P. 19 advisory committee's note (stating that Rule 19 "is not at variance with the settled authorities holding that a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability.").  The Court agrees with the Magistrate Judge that sufficient relief can be fashioned without the joinder of the unnamed insureds.  As such, the unnamed insureds are not necessary parties that must be joined under Rule 19.

## IV.    CONCLUSION[6]

After careful consideration of the Report and Recommendation of the Magistrate Judge, in conjunction with an independent examination of the court file, the Court is of the opinion that the Magistrate Judge's Report and Recommendation should be adopted, confirmed and approved in all respects.

Accordingly, it is hereby **ORDERED** as follows:

1. The Report and Recommendation of the Magistrate Judge (Doc. 228) is **adopted, confirmed and approved** in all respects and is made a part of this Order for all purposes, including appellate review.

---

[6] Defendants have made no other objections to the Report and Recommendation, and the Court sees no error in the Magistrate Judge's remaining recommendations.

2.      KJ Chiropractic Center, LLC's Motion to Dismiss (Doc. 204) is **GRANTED** as to Count XI, and **DENIED** in all other respects.

3.      Sadat Smith's Motion to Dismiss (Doc. 205) is **GRANTED** as to Count XI, and **DENIED** in all other respects.

4.      Orlene Joseph's Motion to Dismiss Plaintiffs' Final Amended Complaint (Doc. 206) is **GRANTED** as to Count XI, and **DENIED** in all other respects.

5.      Arthur Vito and Wellness Pain & Rehab, Inc.'s Motion to Dismiss (Doc. 207) is **GRANTED** as to Count XI, and **DENIED** in all other respects.

6.      Robert Thelusma's Motion to Dismiss (Doc. 209) is **GRANTED** as to Count XI, and **DENIED** in all other respects.

7.      As GEICO has stated plausible claims for relief against Orlene Joseph, her Motion for Rule 11 Sanctions (Doc. 208) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on March 6, 2014.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
United States Magistrate Judge David A. Baker