# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**GOVERNMENT EMPLOYEES
INSURANCE COMPANY, GEICO
GENERAL INSURANCE COMPANY,
GEICO CASUALTY COMPANY and
GEICO INDEMNITY COMPANY,**

              **Plaintiffs,**

**v.**                                     **Case No:  6:12-cv-1138-Orl-40DCI**

**KJ CHIROPRACTIC CENTER LLC,
WELLNESS PAIN & REHAB, INC.,
SADAT SMITH, ARTHUR VITO,
ESDRAS PIERRE LOUIS, JEAN
CASSAMAJOR, ROBERT COHEN,
ORLENE JOSEPH, EDNER DESIR,
ELAINE FELIX, VLADIMIR JEAN
PIERRE, ROBERT THELUSMA,
SHENIKA RICHARDSON, SHAYLA
GAINES, CHANEL AKINS, QUEENA
MCRAE, JEAN DORESTANT and
BELLE MANAGEMENT, LLC,**

              **Defendants.**

_____

# REPORT AND RECOMMENDATION

This cause comes before the Court for consideration on the following motions:

| | |
|---|---|
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT (Doc. 632)** |
| **FILED:** | **April 6, 2017** |
| | |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**. | |

| MOTION: | JOINT MOTION FOR ENTRY OF SEPARATE AND FINAL JUDGMENT (Doc. 656) |
|---|---|
| FILED: | October 4, 2017 |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.   PROCEDURAL BACKGROUND

On July 23, 2012, Plaintiffs filed a complaint against Defendants.  Doc. 1.  Plaintiffs filed an amended complaint on December 15, 2012.  Doc. 112.  On July 12, 2013, Plaintiffs filed a second amended complaint (the Operative Complaint) alleging ten causes of action against Defendants.[1]  Doc. 187.  Count 1 alleges a cause of action against Defendants Robert Cohen, Jean Cassamajor, Esdras Pierre Louis, Vladimir Jean Pierre for violations of 18 U.S.C. § 1962(c) resulting from their participation in the KJ Chiropractic Enterprise.[2]  *Id*. at 113-15.  Count 2 alleges a cause of action against Defendants Cohen, Cassamajor, Louis, Pierre, Shenika Richardson, Shayla Gaines, and Chanel Akins for violations of 18 U.S.C. § 1962(d) resulting from their participation in the KJ Chiropractic Enterprise.  *Id*. at 116-17.  Count 3 alleges a cause of action against Defendants Robert Thelusma, Elaine Felix, Edner Desir, Cassamajor, Louis, and Pierre for violations of 18 U.S.C. § 1962(c) resulting from their participation in the Wellness Enterprise.[3]  *Id*. at 117-20.  Count 4 alleges a cause of action against Defendants Thelusma, Felix, Desir,

---

[1] The Court dismissed Count 11 of the Operative Complaint.  Doc. 260.

[2] As the undersigned will discuss in more detail, the KJ Chiropractic Enterprise involved KJ Chiropractic Center, LLC's (KJ Chiropractic) creation of fraudulent treatment records and bills that were mailed to Plaintiffs as part of a comprehensive scheme to receive fraudulent insurance payments from Plaintiffs.

[3] As the undersigned will discuss in more detail, the Wellness Enterprise involved Wellness Pain & Rehab, Inc.'s (Wellness) creation of fraudulent treatment records and bills that were mailed to Plaintiffs as part of a comprehensive scheme to receive fraudulent insurance payments from Plaintiffs.

Cassamajor, Louis, and Pierre for violations of 18 U.S.C. § 1962(d) resulting from their participation in the Wellness Enterprise. *Id.* at 120-22. Count 5 alleges a cause of action against Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir for violations of 18 U.S.C. § 1962(c) resulting from their participation in an association-in-fact enterprise. *Id.* at 122-26. Count 6 alleges a cause of action against all of the foregoing named Defendants (the Default Defendants) for violations of 18 U.S.C. § 1962(c) resulting from their participation in an association-in-fact enterprise. *Id.* at 126-27. Counts 7 and 8 allege causes of action against the Default Defendants for common law fraud and civil conspiracy, respectively. *Id.* at 127-33. Counts 9 and 10 allege causes of action against Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir for unfair and deceptive trade practices, and unjust enrichment, respectively. *Id.* at 133-38.

Plaintiffs served the Default Defendants on the following dates:

- Robert Cohen – August 6, 2012 (Doc. 34)
- Jean Cassamajor – August 14, 2012 (Doc. 40)
- Esdras Pierre Louis – January 21, 2013 (Doc. 138)
- Vladimir Jean Pierre – August 13, 2012 (Doc. 31)
- Robert Thelusma[4]
- Elaine Felix – January 25, 2013 (Docs. 136; 143)
- Edner Desir – July 2, 2014 (Doc. 359)
- Shenika Richardson – August 13, 2012 (Doc. 30)
- Chanel Akins – August 13, 2012 (Doc. 32)
- Shayla Gaines – July 5, 2014 (Doc. 360)

The Clerk subsequently entered default against the Default Defendants. *See* Docs. 51; 52; 53; 54; 60; 148; 153; 363; 364; 425.

---

[4] Plaintiffs failed to file proof of service with regard to Defendant Thelusma. However, Defendant Thelusma filed multiple documents in this case, including a notice of joinder in Defendant Arthur Vito's motion to dismiss the Operative Complaint. *See, e.g.*, Doc. 209.

On April 6, 2017, Plaintiffs moved for default judgment (the Motion) against the Default Defendants as to Counts 1 through 10.  Doc. 632.  Defendant Thelusma filed a response in opposition to the Motion, but later withdrew his opposition.  Docs. 639; 655.  Then, on October 4, 2017, Plaintiffs and Defendant Thelusma filed a Joint Motion for Entry of Separate and Final Judgment (the Joint Motion).  Doc. 656.

## II.   <u>ALLEGATIONS</u>[5]

Plaintiffs allege that Defendants were part of a comprehensive scheme that was comprised of numerous participants, including KJ Chiropractic and Wellness.  Doc. 187.  As the Court has previously explained, the scheme involved the recruitment of "'runners' and other individuals to participate in staged automobile accidents, compensating participants who engaged in those staged automobile accidents, referring those participants to pre-selected clinics for treatment, submitting the automobile insurance claims to [Plaintiffs], and then receiving payment of the insurance benefits from [Plaintiffs]."[6]  Doc. 495 at 1-2; *see also* Doc. 187 at 2-6.  As part of the scheme, KJ Chiropractic and Wellness created false treatment records and bills for treatment allegedly rendered by KJ Chiropractic and Wellness.  Doc. 187 at 2-6.  KJ Chiropractic and Wellness then used the United States Mail to send these false documents to Plaintiffs.  *Id.*; *see also* Doc. 187-1. As a result, between 2009 and 2012, Defendants fraudulently collected more than $1,621,225.43 from Plaintiffs.  Docs. 187 at 2-6; 187-1; 187-2.

---

[5]  Plaintiffs make many of the following allegations repeatedly throughout the Operative Complaint.  To promote legibility, and in the interest of judicial economy, the undersigned will not cite to every instance in which Plaintiffs make the following allegations.

[6]  Plaintiffs also alleged that as part of the scheme, KJ Chiropractic and Wellness provided unnecessary, excessive, and unlawful treatment to individuals involved in real automobile accidents.  Doc. 187 at 2.

With regard to the Default Defendants, Plaintiffs alleged the following:  Defendant Cohen was a natural person residing in Florida.  Doc. 187 at 8.  Defendant Cohen worked as a chiropractor at KJ Chiropractic and assisted in controlling KJ Chiropractic's internal operations.  *Id*. at 8, 12. Defendant Cohen agreed to enact a scheme to defraud Plaintiffs by soliciting chiropractic patients and staging accidents.  *Id*. at 103.  Defendant Cohen knew that KJ Chiropractic was rendering unnecessary and unlawful treatment, was allowing unlicensed individuals to administer treatment, and was causing false bills to be mailed to Plaintiffs, yet Defendant Cohen continued to work at KJ Chiropractic and allowed his name to be used on fraudulent medical records.  *Id*. at 4, 15-16, 18-19, 103-04.

Defendants Cassamajor, Louis, and Pierre were natural persons residing in Florida.  *Id*. at 10.  They were "runners" used to recruit third parties to participate in staged automobile accidents. *Id*. at 3, 51, 53-67, 103.  They instructed the recruited claimants on how to obtain automobile insurance from Plaintiffs.  *Id*. at 3.  Once the recruited claimants had obtained automobile insurance, Defendants Cassamajor, Louis, and Pierre physically escorted the claimants to the location they had selected for the staged automobile accident and instructed the claimants on how to make the automobile accident appear real.  *Id*.  Defendants Cassamajor, Louis, and Pierre further instructed the claimants to "claim neck and/or back injuries so [that the claimants] could present, and profit from, false PIP, bodily injury and, in some cases, property damage claims."  *Id*. at 3, 52. Defendants Cassamajor, Louis, and Pierre then directed the Claimants to KJ Chiropractic and Wellness.  *Id*. at 3, 14.  KJ Chiropractic and Wellness paid money to Defendants Cassamajor, Louis, and Pierre for delivering the PIP claimants.  *Id*. at 4, 14, 22.  Defendants Cassamajor, Louis, and Pierre knew that KJ Chiropractic and Wellness were rendering unnecessary and unlawful treatment, was allowing unlicensed individuals to administer treatment, and was causing false bills

to be mailed to Plaintiffs. *Id*. at 18-19, 29-30, 40, 53-67, 103-04. Defendant Louis confessed to his involvement in the scheme, and testified that Defendants Cassamajor and Pierre were also involved in the scheme. *Id*. at 56-67.

Defendants Thelusma, Felix, and Desir were natural persons residing in Florida. *Id*. at 9. From 2010 through 2012, Defendants Thelusma, Felix, and Desir established, operated, and managed Wellness. *Id* at 4, 9, 20-21. They worked together to defraud Plaintiffs by causing the creation of fraudulent medical records and bills. *Id*. at 22. Defendants Thelusma and Felix hired, trained, supervised, and paid the employees that worked at Wellness. *Id*. at 22-25. Defendants Thelusma, Felix, and Desir knew that the "runners" were staging automobile accidents in order to refer patients to Wellness, and caused money to be paid to the "runners." *Id*. Defendants Thelusma, Felix, and Desir caused employees at Wellness to bill for treatments that patients had not received. *Id*. Defendants Thelusma, Felix, and Desir profited from Wellness' business operations. *Id*. Defendants Thelusma, Felix, and Desir knew that Wellness was rendering unnecessary and unlawful treatment, was allowing unlicensed individuals to administer treatment, and was causing false bills to be mailed to Plaintiffs. *Id*. at 29-30, 35, 103-04.

Defendants Richardson, Akins, and Gaines were natural persons residing in Florida. *Id*. at 10. In exchange for payment, they each participated in staged automobile accidents and caused false medical records and bills to be mailed to Plaintiffs. *Id*. at 41-49, 54-56; *see also* Doc. 187-11. Defendants Richardson, Akins, and Gaines confessed to their involvement in the scheme. *Id*. at 44-49, 54-56.

## III.   **<u>STANDARD OF REVIEW</u>**.

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment. First, when a party against whom a judgment for affirmative relief is sought fails to

plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default. Fed. R. Civ. P. 55(a). Second, after obtaining clerk's default, the plaintiff must move for default judgment. Fed. R. Civ. P. 55(b). Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[7]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment.

If the plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is entitled to the relief requested in their motion for default judgment. If the plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of

---

[7] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

damages sought in the motion for default judgment.  *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008).  Unlike well-pled allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages.  *Id*. (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)).  Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]"  *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages).

Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages.  *See Adolph Coors*, 777 F.2d at 1543-44 (11th Cir. 1985).  However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages."  *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also Wallace*, 247 F.R.D. at 681 ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").  A plaintiff may use affidavits in an effort to quantify their damages claim.  *Adolph Coors*, 777 F.2d at 1544.

IV.   **DISCUSSION**.

   **A.  Subject Matter Jurisdiction.**

Plaintiffs alleged federal causes of action arising under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68.  Docs. 1; 112; 187.  Accordingly, the

- 8 -

Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The Court has supplemental

jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

### B.  Personal Jurisdiction.

The Court has personal jurisdiction over the Default Defendants because the Default

Defendants resided in the state of Florida and the majority of the wrongful acts were carried out

within Orange County, Florida.  Doc. 187 at 7-10.

### C.  Service of Process

Plaintiffs properly served the Default Defendants.[8]  *See* Docs. 30-32, 34, 40, 136, 138, 143,

350-60.  But the undersigned notes that most of the Default Defendants were not served with the

Operative Complaint.  Specifically, Defendants Cohen, Cassamajor, Pierre, Richardson, and Akins

were served with the original complaint (Doc. 1).  And Defendants Louis and Felix were served

with the first amended complaint (Doc. 112).  There is nothing in the docket to indicate that these

Defendants (the Rule 5 Defendants) were later served with the Operative Complaint.

Federal Rule of Civil Procedure 5(a)(2) provides as follows: "No service is required on a

party who is in default for failing to appear.  But a pleading that asserts a new claim for relief

against such a party must be served on that party under Rule 4."  Fed. R. Civ. P. 5(a)(2).  The

purpose of Rule 5(a)(2) is to ensure that "a party, having been served, is able [to] make an informed

decision not to answer a complaint without fearing additional exposure to liability for claims raised

only in subsequent complaints that are never served."  *See, e.g.*, *Blair v. City of Worcester*, 522

F.3d 105, 109 (1st Cir. 2008); *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, 2014 WL 6810663, at *3

(S.D. Cal. Dec. 2, 2014).  "While adding new claims require[s] service under Rule 4, the addition

---

[8] As previously noted, Plaintiffs failed to file proof of service with regard to Defendant Thelusma.
But, Defendant Thelusma filed multiple documents in this case, including a notice of joinder in
Defendant Arthur Vito's motion to dismiss the Operative Complaint.  *See, e.g.*, Doc. 209.

of new factual allegations do[es] not." *Wahoo Int'l*, 2014 WL 6810663, at *3 (citing *JBR, Inc. v. Cafe Don Paco, Inc.*, 2014 WL 5034292, at *1 (N.D. Cal. Sept. 30, 2014) ("the plain language of Rule 5(a)(2) compels the conclusion that the addition of new factual allegations in an amended complaint, without the addition of a new claim, does not require service of the amended pleading on a party in default for failure to appear.")); *see also Poitevint v. Dynamic Recovery Servs., Inc.*, 2011 WL 201493, *1 (M.D. Fla. Jan. 20, 2011) ("But, '[w]here changes made in an amended complaint are not substantial, the requirement of [Rule 5(a)(2)] that a pleading that states a new claim for relief against a party in default must be served on that party is not applicable.'") (citations omitted) (alterations in original).

Here, the undersigned finds that the Operative Complaint is not substantially different from the original complaint. The original complaint (Doc. 1), or in the case of Defendants Louis and Felix the amended complaint (Doc. 112), asserts the same causes of action against the Rule 5 Defendants, and seeks the same types of damages.[9]  Although the Operative Complaint asserts more detailed factual allegations, the claims remained the same, and the Operative Complaint did not subject the Rule 5 Defendants to additional exposure to liability for claims subsequently raised. Thus, the Rule 5 Defendants had an opportunity to make an informed decision regarding whether or not to answer the complaint, and chose not to respond. Accordingly, the undersigned finds that Plaintiffs were not required to serve the Rule 5 Defendants with the Operative Complaint, the Rule

---

[9] For instance, the original complaint (Doc. 1) alleges causes of action for violations of 18 U.S.C. § 1962(c) & (d), and seeks actual and consequential damages, treble damages, interest, costs, reasonable attorney fees, and injunctive relief. Doc. 1 at 37-40. The Operative Complaint also alleges causes of action for violation of § 1962(c) & (d), and seeks actual and consequential damages, treble damages, interest, costs, reasonable attorney fees, and injunctive relief. Doc. 187 at 113-27.

5 Defendants may be held liable under the Operative Complaint, and the Operative Complaint should be used to determine the sufficiency of the allegations against the Rule 5 Defendants.

### D. Counts 1 and 3 – Title 18 U.S.C. § 1962(c)

In Counts 1 and 3, Plaintiffs alleged causes of action against Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir for violations of § 1962(c) resulting from their participation in the KJ Chiropractic Enterprise and the Wellness Enterprise. Doc. 187 at 113-15, 117-20. Section 1962(c) provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

§ 1962(c).

"To establish a violation of this provision, a plaintiff must prove four elements: '(1) the existence of a RICO enterprise; (2) the existence of a pattern of racketeering; (3) a nexus between the defendant, the pattern of racketeering activity or the RICO enterprise; and (4) resulting injury to the plaintiff, in his business or property.'" Doc. 495 at 9 (quoting *Opteum Fin. Servs., LLC v. Kolbe*, No. 8:03-cv-355-T-17TBM, 2010 WL 3766470, at *7 (M.D. Fla. Sept. 22, 2010)[10]).

To prove the existence of a RICO enterprise, a plaintiff must show that a group of persons associated, formally or informally, with the purpose of conducting illegal activity. *See Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) ("A RICO enterprise exists 'where a group of persons associates, formally or informally, with the purpose of conducting illegal activity.'") (citation omitted). Here, the Court previously found that the members of the KJ Chiropractic Enterprise and the Wellness Enterprise comprised an "enterprise" within the meaning

---

[10] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. 11th Cir. R. 36–2.

of RICO.  Doc. 495 at 10.  And Plaintiffs included sufficient well-pled facts in the Operative

Complaint to establish that Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and

Desir were part of the KJ Chiropractic Enterprise or the Wellness Enterprise, or both.  Accordingly,

the undersigned finds that these Defendants were part of an "enterprise" within the meaning of

RICO.

 To establish a pattern of racketeering, Plaintiffs must prove that "(1) the defendants

committed two or more predicate acts within a ten-year span; (2) the predicate acts were related to

one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature."

*Jackson*, 372 F.3d at 1264 (citations omitted) (emphasis in original).  A predicate act includes "any

act which is indictable under . . . [18 U.S.C. §] 1341 (relating to mail fraud), [or 18 U.S.C. §] 1343

(relating to wire fraud)."  18 U.S.C. § 1961(1).  The Court previously explained the elements of

mail and wire fraud as follows:

> The elements of mail and wire fraud are the same.  *Pelletier v. Zweifel*, 921 F.2d
> 1465, 1498 (11th Cir. 1991), *abrogated on other grounds by Bridge v. Phoenix
> Bond & Indem. Co.*, 553 U.S. 639 (2008).  The predicate acts of "[m]ail or wire
> fraud occur[] when a person (1) intentionally participates in a scheme to defraud
> another of money or property and (2) uses the mails or wires in furtherance of that
> scheme."  *Id*.  The defendant need not have personally committed each element of
> mail or wire fraud.  *United States v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007).
> Rather, "a defendant may be convicted of mail [or wire] fraud without personally
> committing each and every element . . . so long as the defendant knowingly and
> willfully joined the criminal scheme, and a co-schemer used the emails for the
> purpose of exacting the same scheme."  *Id*. (footnote omitted).

Doc. 495 at 11 (alterations in original).  The Court then found that Plaintiffs provided sufficient

evidence to demonstrate that two Defendants, Jean Dorestant and Belle Management, LLC (Belle

Management), committed mail and wire fraud multiple times.  *Id*. at 11-12.

 Likewise, the undersigned finds that the well-pled facts in the Operative Complaint

establish that Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir committed

mail and wire fraud on multiple occasions.  The Operative Complaint is replete with well-pled facts demonstrating that the KJ Chiropractic Enterprise and the Wellness Enterprise used the mail in furtherance of a criminal scheme to defraud Plaintiffs of money.  *See* Docs. 187; 187-1; 187-2. And Plaintiffs provided sufficient well-pled facts to demonstrate that Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir knowingly and willfully joined the criminal scheme.  *See* Doc. 187.  Further, it is apparent from the well-pled facts that the predicate acts of mail fraud were related[11] and continuing[12] in nature, as the acts had the same or similar purpose, results, victims, and methods of commission, and occurred repeatedly over a period of several years.[13]  *See* Docs. 187; 187-1; 187-2.  Accordingly, the undersigned finds the existence of a pattern of racketeering, and a nexus between Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir and the pattern of racketeering activity.

Finally, the undersigned finds that the well-pled facts establish that Plaintiffs were injured as a result of Defendants' RICO enterprise.  Plaintiffs provided numerous examples of the offending conduct, and set forth in detail how they were injured by Defendants' actions.  Docs. 187; 187-1; 187-2.

Based upon the foregoing, the undersigned finds that the well-pled facts establish that Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir violated § 1962(c).

---

[11] Predicate acts that are related have the same or similar purposes, results, victims, or methods of commission and are not isolated events.  *See United States v. Browne*, 505 F.3d 1229, 1258 (11th Cir. 2007).

[12] "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989) (citation omitted).

[13] The Court previously found that the predicate acts of mail fraud were related and continuing in nature.  *See* Doc. 495 at 12-13.

### E.  Counts 2 and 4 – Title 18 U.S.C. § 1962(d)

In Counts 2 and 4, Plaintiffs alleged causes of action against Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir for violations of § 1962(d) resulting from their participation in the KJ Chiropractic Enterprise and the Wellness Enterprise.  Doc. 187 at 116-17, 120-22.  Section 1962(d) provides as follows "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  § 1962(d).  A RICO conspiracy claim may be established by showing that the defendant agreed to the overall objective of the conspiracy or by showing that the defendant agreed to commit two predicate acts.  *Am. Dental Ass'n v. Cigna Corp*. 605 F.3d 1283, 1293 (11th Cir. 2010) (citation omitted).  "Evidence of a RICO agreement may be supported by direct evidence or may be inferred from the participants' conduct."  Doc. 495 at 14 (citing *Am. Dental Ass'n*, 605 F.3d at 1293).

Here, the well-pled factual allegations support that Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir agreed to the overall objective of the conspiracy and agreed to commit two predicate acts.  Defendant Cohen, with full knowledge that KJ Chiropractic was rendering unlawful treatment, continued to work at KJ Chiropractic and allowed his name to be used on fraudulent documents.  Doc. 187 at 8, 12, 15-16, 18-19, 103-04.  Defendants Cassamajor, Louis, and Pierre recruited numerous individuals to stage automobile accidents in order to create false medical records and bills to send to Plaintiffs.  *Id*. at 3, 51, 53-67, 103.  And Defendants Thelusma, Felix, and Desir, among other things, knew that "runners" were staging automobile accidents, caused money to be paid to these "runners," and caused employees at Wellness, which they established, operated, and managed, to submit bills for treatments that patients had not received.  *Id* at 4, 9, 20-25, 29-30, 35, 103-04.  As such, it is can be readily inferred from the well-

pled factual allegations that Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir agreed to the overall objective of the conspiracy and agreed to commit two predicate acts.

With regard to Count 2, Plaintiffs also alleged that Defendants Richardson, Akins, and Gaines violated § 1962(d) through their participation in the KJ Chiropractic Enterprise. *Id*. at 116-17. It can be readily inferred from Defendant Richardson's, Akins', and Gaines' conduct that they agreed to the overall objective of the conspiracy. Defendants Richardson, Akins, and Gaines were recruited by "runners" to stage fake automobile accidents. *Id*. at 44-56. Prior to staging these fake automobile accidents, Defendant Richardson purchased automobile insurance from Plaintiffs. *Id*. Then, after staging these fake automobile accidents, Defendants Richardson, Akins, and Gaines falsely reported to Plaintiffs that they were injured as a result of the "accident," and presented to KJ Chiropractic or Wellness multiple times for "treatment." *Id*. Defendants Richardson, Akins, and Gaines were paid for their participation in this scheme. *Id*. As such, it is can be inferred that Defendants Richardson, Akins, and Gaines knew that they were participating in a scheme to defraud Plaintiffs by sending false medical records and bills to Plaintiffs through the mail.

Based upon the foregoing, the undersigned finds that Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, Desir, Richardson, Akins, and Gaines violated § 1962(d).

## F.  Counts 5 and 6 – Association-in-Fact Enterprise

In Counts 5 and 6, Plaintiffs alleged causes of action against Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir for violations of § 1962(c) & (d) resulting from their participation in an association-in-fact enterprise. Doc. 187 at 122-27. An association-in-fact enterprise must have a structure that is "simply a continuing unit that functions with a common purpose." Doc. 495 at 13 (quoting *Boyle v. United States*, 556 U.S. 938, 948 (2009)) (internal quotations omitted). "Specifically, it must have at least three features to constitute having

a 'structure:' (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id*. at 13-14 (citing *Boyle*, 556 U.S. at 946).

Here, the Court previously found that GEICO provided sufficient evidence to establish the existence of an association-in-fact enterprise. *Id*. at 14. Likewise, the undersigned now finds that the well-pled facts in the Operative Complaint establish the existence of an association-in fact enterprise. The enterprise had the common purpose of staging automobile accidents in order to defraud Plaintiffs, the relationships among those associated with the enterprise were clearly established, and the enterprise existed for several years. *See* Docs. 187; 187-1; 187-2. And for the reasons previously discussed, the undersigned finds that Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir participated in the association-in-fact enterprise in violation of § 1962(c) & (d).

With regard to Count 6, Plaintiffs also alleged that Defendants Richardson, Akins, and Gaines participated in the association-in-fact enterprise in violation of § 1962(d). For the reasons previously discussed, the undersigned finds that Defendants Richardson, Akins, and Gaines participated in the association-in-fact enterprise in violation of § 1962(d).

Based upon the foregoing, the undersigned finds Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir participated in an association-in-fact enterprise in violation of § 1962(c) & (d). The undersigned further finds that Defendants Richardson, Akins, and Gaines participated in an association-in-fact enterprise in violation of 18 U.S.C. § 1962 (d).

### G.  Count 7 – Common Law Fraud

In Count 7, Plaintiffs alleged a cause of action against the Default Defendants for common law fraud.  Doc. 187 at 127-29.  "To succeed on a claim for common law fraud under Florida law, [Plaintiffs] must prove the following elements: '(1) [a] false statement concerning a material fact[,] (2) [k]nowledge by the person making the statement that the representation is false[,] (3) [t]he intent by the person making the statement that the representation will induce another to act on it[, and] (4) [r]eliance on the representation to the injury of the other party.'"  Doc. 495 at 15 (quoting *Tucker v. Mariani*, 655 So. 2d 223, 225 (Fla. Dist. Ct. App. 1995)).  Common law fraud claims are generally duplicative of RICO claims based upon multiple acts of mail fraud, with the essential difference being that a plaintiff must have actually relied on the defendant's false representation such that the defendant caused the plaintiff's injury.  Doc. 495 at 15 (citing *Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 2d 1306, 1323 (S.D. Fla. 2009)).

The Court previously found that Plaintiffs provided sufficient evidence to establish that members of the KJ Chiropractic Enterprise and the Wellness Enterprise made false statements of material fact by submitting false insurance claims to Plaintiffs, that these members knew the insurance claims were false, that the insurance claims were submitted to Plaintiffs with the intent to make Plaintiffs rely on these false insurance claims in issuing benefits, and that Plaintiffs did in fact rely on these false insurance claims and issue payments to KJ Chiropractic and Wellness as a result of that reliance.  Doc. 495 at 15-16.  Likewise, the undersigned now finds, for the reasons previously discussed, that the well-pled facts in the Operative Complaint establish that the Default Defendants knowingly made false statements of material fact with the intent to induce Plaintiffs to act on those false statements by issuing insurance benefits.  *See* Doc. 187.  Plaintiffs did, in fact,

issue insurance benefits in reliance on these false statements of material fact.  *See* Doc. 187; 187-1; 187-2.

Based upon the foregoing, the undersigned finds that the Default Defendants committed common law fraud against Plaintiffs.

### H.  Count 8 – Civil Conspiracy

In Count 8, Plaintiffs alleged a cause of action against the Default Defendants for civil conspiracy.  Doc. 187 at 129-33.  "To succeed on a claim for civil conspiracy under Florida law, [Plaintiffs] must prove the following elements: '(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy.'"  Doc. 495 at 16 (quoting *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. Dist. Ct. App. 2006).  For the reasons previously discussed with respect to the Default Defendants' violations of § 1962(d), the undersigned finds that the Default Defendants participated in a conspiracy between more than two parties to do an unlawful act, an overt act was performed in pursuance of that conspiracy, and Plaintiffs were damaged as a result.

Based upon the foregoing, the undersigned finds that the Default Defendants committed civil conspiracy against Plaintiffs.

### I.  Count 9 – Unfair and Deceptive Trade Practices

In Count 9, Plaintiffs alleged a cause of action against Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir for unfair and deceptive trade practices in violation of Florida Statutes § 501.204(1)(a).  Doc. 187 at 133-34.  To establish a claim for unfair and deceptive trade practices under Florida law, "a party must show: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  Doc. 495 at 16-17 (citing *Virgilio v. Ryland Grp., Inc.*, 680

F.3d 1329, 1338 n.25 (11th Cir. 2012) (citation omitted)).  An unfair trade practice is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  Doc. 495 at 17 (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).

Here, the well-pled facts in the Operative Complaint establish that Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir participated in a scheme to defraud Plaintiffs that involved the staging of fake automobile accidents, the filing of false insurance claims, and the creation of fraudulent medical records and bills.  *See* Docs. 187; 187-1; 187-2.  As a result of Defendants' scheme, Plaintiffs paid Defendants insurance benefits based upon false insurance claims.  *See* Docs. 187; 187-1; 187-2.  Thus, Defendants' scheme caused Plaintiffs to suffer actual damages.

Based upon the foregoing, the undersigned finds that Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir committed unfair and deceptive trade practices in violation of Florida Statutes § 501.204(1)(a).

### J.  Count 10 – Unjust Enrichment

In Count 10, Plaintiffs alleged a cause of action against Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir for unjust enrichment.  Doc. 187 at 135-38.  "To succeed on a claim for unjust enrichment under Florida law, [Plaintiffs] must prove the following elements: '(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.'"  Doc. 495 at 17 (quoting *Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994)).  "A benefit passing through a third party does not preclude an unjust

enrichment claim."  Doc. 495 at 17-18 (citing *Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4901346, at *5 (S.D. Fla. 2011)).

The Court previously found that Plaintiffs conferred a benefit upon two members of the RICO enterprise by making insurance benefit payments to KJ Chiropractic that were then distributed to those members, that those members knew that the payments were procured illegally, and that it would have been inequitable for those members to have retained the benefits.  Doc. 495 at 18.  Likewise, the well-pled facts in the Operative Complaint establish that Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir received payments from Plaintiffs, either directly or through third parties, and that Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir knew that the payments were procured illegally.  *See* Docs. 187; 187-1; 187-2. The undersigned finds that it would be inequitable for Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir to retain the benefits derived from Plaintiffs payments – payments that were made as a result of a conspiracy to defraud Plaintiffs by staging fake automobile accidents and filing false insurance claims.

Based upon the foregoing, the undersigned finds that Defendants Cohen, Cassamajor, Louis, Pierre, Thelusma, Felix, and Desir were unjustly enriched as a result of their scheme to defraud Plaintiffs.

### K.  The Joint Motion

In the Joint Motion, Plaintiffs and Defendant Thelusma asked the Court to enter a judgment in favor of Plaintiffs and against Defendant Thelusma "in the sum certain amount of Six Million Seven Hundred Eight Thousand Five Hundred Fifty Three Dollar and Seventy Three Cents, ($6,708,553.73) relative to all of [Plaintiffs'] claims against Robert Thelusma (Doc. 187: Counts 3-10), inclusive of costs and attorney's fees pursuant to 18 U.S.C. § 1964(c)."  Doc. 656 at 1-2.

Defendant Thelusma represented to the Court that he has no objection to Plaintiffs calculation of costs or attorney fees. *Id*. at 5.

Federal Rule of Civil Procedure 54(b) provides as follows with regard to the entry of judgment as to fewer than all parties:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Whether or not there is no just reason for delay is a decision left to the sound discretion of the district court. *See Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F. 3d 162, 166 (11th Cir. 1997) ("We will not disturb the district court's assessment unless it was clearly unreasonable.") (citations omitted). However, the district court should support its conclusion by "clearly and cogently articulating its reasoning, together with the supporting factual and legal determinations." *Id*. (citations omitted). If the district court fails to do so, then any deference the Eleventh Circuit may have accorded the district court's Rule 54(b) certification will be nullified. *See id*. (citations omitted).

Here, the undersigned finds no just reason for delaying the entry of judgment against Defendant Thelusma. There are no pending cross-claims between Plaintiffs and Defendant Thelusma, so granting the Joint Motion will fully dispose of all issues between Plaintiffs and Defendant Thelusma. *See* Doc. 656 at 4. Further, the remaining parties in this case – Defendants Cohen, Cassamajor, Louis, Pierre, Felix, Desir, Richardson, Akins, and Gaines – are the subjects

of Plaintiffs' Motion for default judgment that is now before the undersigned.[14]   None of these remaining parties will be prejudiced by the entry of judgment against Defendant Thelusma in the amount of $6,708,553.73.

Based upon the foregoing, the undersigned finds that the Court should enter judgment in favor of Plaintiffs and against Defendant Thelusma in the amount of $6,708,553.73

### L.  Damages

In the Motion, Plaintiffs asked the Court to award damages, jointly and severally, against the Default Defendants in the total amount of $6,938,225.42, plus any applicable interest.  Doc. 632 at 25.  Specifically, Plaintiffs requested $4,863,676.29 in treble damages ($1,621,225.43 in single damages),[15] $2,018,189.32 in attorney fees, and $56,359.81 in costs.  *Id*.  In support of their request, Plaintiffs attached affidavits and detailed exhibits setting forth the insurance benefits Plaintiffs paid as a result of the Default Defendants' scheme.  Docs. 632-1; 632-2; 632-3; 632-4; 632-5.  Plaintiffs also attached an affidavit in support of reasonable attorney fees.  Doc. 632-7. But the affidavit contains virtually no details regarding the time Plaintiffs' counsel spent on the case.  *See id*.  The affidavits attached to the Motion also do not set forth any details regarding Plaintiffs alleged costs.  *See* Docs. 632-1; 632-7.

---

[14] Plaintiffs plan to file a motion of voluntary dismissal with regard to Defendant Queena McRae. Doc. 656 at 4 n.1.

[15] Although Plaintiffs claim they are entitled to damages on all of their claims, Plaintiffs seek treble damages pursuant to the requested RICO judgments in Counts 1 through 6.  *See* Doc. 632 at 17-19.  As such, the undersigned construes Plaintiffs' Motion as electing to recover treble damages on Plaintiffs' RICO claims because all of Plaintiffs' claims seek redress for the same injury. Plaintiffs recognized that they are not entitled to recover additional damages resulting from the state law claims to the extent that those damages are awarded pursuant to Plaintiffs RICO claims. *See id*. at 21 n.7; *White v. United States*, 507 F.2d 1101, 1103 (5th Cir. 1975) ("It is true that no duplicating recovery of damages for the same injury may be had.") (citation omitted).

The Court has previously examined the documents provided by Plaintiffs and found that Plaintiffs sufficiently established that they sustained compensatory damages in the amount of $1,621,225.43 due to Defendants' fraudulent scheme. *See* Doc. 649 at 4-6. And upon review of the documents attached to the Motion, the undersigned agrees. Accordingly, the undersigned finds that Plaintiffs sustained compensatory damages in the amount of $1,621,225.43, and that Plaintiffs are entitled to $4,863,676.29 in compensatory damages after trebling. *See id.*; 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains . . . .").

The Court has also previously considered whether Plaintiffs were entitled to prejudgment interest and found that they were not. Doc. 649 at 6-7. The Court explained that Plaintiffs would be more than adequately compensated for their actual damages by the award of treble damages pursuant to § 1964(c), and that awarding Plaintiffs prejudgment interest would place Plaintiffs in a better economic position than they would have otherwise occupied. *Id.* (citing *Masco Corp. v. Bennett*, No. 3:08-cv-161-RJC-DCK, 2010 WL 1405136, at *3 (W.D.N.C. Mar. 31, 2010 (declining to award prejudgment interest on RICO judgment where "the treble damages more than adequately compensate the plaintiffs for their losses")) (additional citation omitted). For the same reasons, the undersigned finds that Plaintiffs are not entitled to prejudgment interest.

However, the Court found that Plaintiffs were entitled to postjudgment interest pursuant to 28 U.S.C. § 1961. Doc. 649 at 7 (explaining that postjudgment interest is not discretionary) (citations omitted). Accordingly, the undersigned finds that Plaintiffs are entitled to postjudgment interest.

The Court also found that, because Plaintiffs had established that Defendants acted collectively through concerted actions to cause harm to Plaintiffs and to further Defendants' financial position, Defendants Dorestant and Belle Management should be held jointly and severally liable for the damages incurred by Plaintiffs as a result of their actions.  Doc. 649 at 7-8 (citing *Allstate Ins. Co.*, 653 F. Supp. 2d at 1334 (holding that joint and several liability was proper where joint tortfeasors produce a single injury)).  The Court's reasoning applies with equal force here.  Accordingly, the undersigned finds that the Default Defendants should be held jointly and severally liable for the damages incurred by Plaintiffs as a result of the RICO enterprise.

Finally, with regard to Plaintiffs' request for attorney fees and costs, the Court previously found that although the RICO statute provides for the recovery of attorney fees and costs, Plaintiffs had not adequately established how they arrived at the sums they were requesting, and thus denied without prejudice Plaintiffs' request for attorney fees and costs.  Doc. 649 at 8-9 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.")).  The undersigned finds that Plaintiffs again failed to carry their burden.  Like their last request, the documents provided by Plaintiffs do not detail "how many hours were spent working on the case, what work was performed by whom, or the hourly rate for each employee."  *See* Doc. 649 at 9.  Nor did Plaintiffs provide any detailed billing records.  Instead, Plaintiffs asserted, in conclusory fashion, that the attorney fees were based upon the number of hours worked by each employee and the firm's customary billing rates.  But Plaintiffs conclusory assertions are not sufficient to carry their burden.  Accordingly, the undersigned finds that Plaintiffs are not entitled to attorney fees and costs at this time.

V.    <u>**CONCLUSION**</u>.

Accordingly, for all of the foregoing reasons, the undersigned respectfully

**RECOMMENDS** that:

1.  The Motion (Doc. 632) be **GRANTED in part** as follows:

    a.  Defendants Cassamajor, Louis, and Pierre be found liable as to Counts 1
    
        through 10;
    
    b.  Defendants Thelusma, Felix, and Desir be found liable as to Counts 3 through
    
        10;
    
    c.  Defendants Richardson, Akins, and Gaines be found liable as to Counts 2, 6, 7,
    
        and 8;
    
    d.  Defendant Cohen be found liable as to Counts 1, 2, 5, 6, 7, 8, 9, and 10;
    
    e.  Judgment be entered in favor of Plaintiffs and against Defendants Cassamajor,
    
        Louis, Pierre, Felix, Desir, Richardson, Akins, Gaines, and Cohen, jointly and
    
        severally with all Defendants, in the amount of **$4,863,676.29**, plus
    
        postjudgment interest accruing from the date of this Order at the legal rate
    
        established by 28 U.S.C. § 1961;

2.  The Motion (Doc. 632) be **DENIED** as moot as to the request for damages against

    Defendant Thelusma; [16]

3.  The Motion (Doc. 632) be **DENIED** to the extent that Plaintiffs seek prejudgment

    interest;

---

[16] The undersigned is not recommending that damages be awarded against Defendant Thelusma
pursuant to the Motion (Doc. 632) because the undersigned is recommending that damages be
awarded against Defendant Thelusma pursuant to the Joint Motion (Doc. 656).

4. The Motion (Doc. 632) be **DENIED without prejudice** to the extent that Plaintiffs seek attorney fees and costs against the Default Defendants;

5. Plaintiffs be granted leave until December 1, 2017 to file a motion for attorney fees and costs as to the Default Defendants; and

6.  The Joint Motion (Doc. 656) be **GRANTED** as follows:

   a. Judgment be entered in favor of Plaintiffs and against Defendant Thelusma in the amount of **$6,708,553.73**, jointly and severally with all Defendants, plus postjudgment interest accruing from the date of this Order at the legal rate established by 28 U.S.C. § 1961.

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on November 2, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy