# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO GENERAL INSURANCE COMPANY, GEICO CASUALTY COMPANY and GEICO INDEMNITY COMPANY,**

          Plaintiffs,

v.                                                                    Case No:  6:12-cv-1138-Orl-40DCI

**KJ CHIROPRACTIC CENTER LLC, WELLNESS PAIN & REHAB, INC., SADAT SMITH, ARTHUR VITO, ESDRAS PIERRE LOUIS, JEAN CASSAMAJOR, ROBERT COHEN, ORLENE JOSEPH, EDNER DESIR, ELAINE FELIX, VLADIMIR JEAN PIERRE, ROBERT THELUSMA, SHENIKA RICHARDSON, SHAYLA GAINES, CHANEL AKINS, QUEENA MCRAE, JEAN DORESTANT and BELLE MANAGEMENT, LLC,**

          Defendants.

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION IN SUPPORT OF REASONABLE ATTORNEY'S FEES, COSTS, AND EXPENSES RELATIVE TO GEICO'S GRANTED MOTION FOR SUMMARY JUDGMENT AND DEFAULT JUDGMENT (Doc. 663)** |
| **FILED:** | **January 22, 2018** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

**Procedural Background**

On July 23, 2012, Plaintiffs filed a complaint alleging various causes of action, including causes of action arising under the Racketeer Influenced and Corrupt Organizations Act (RICO), against sixteen Defendants. Doc. 1. Since that time Plaintiffs have filed two amended complaints and have joined two additional Defendants. *See* Docs. 112, 187. Plaintiffs allege that Defendants were part of a comprehensive scheme that was comprised of numerous participants. *See* Doc. 187. As the Court has previously explained, the scheme involved the recruitment of "'runners' and other individuals to participate in staged automobile accidents, compensating participants who engaged in those staged automobile accidents, referring those participants to pre-selected clinics for treatment, submitting the automobile insurance claims to [Plaintiffs], and then receiving payment of the insurance benefits from [Plaintiffs]."[1] Doc. 495 at 1-2; *see also* Doc. 187 at 2-6. As part of the scheme, KJ Chiropractic Center, LLC (KJ Chiropractic) and Wellness Pain & Rehab, Inc. (Wellness) created false treatment records and bills for treatment allegedly rendered by KJ Chiropractic and Wellness. Doc. 187 at 2-6. KJ Chiropractic and Wellness then used the United States Mail to send these false documents to Plaintiffs. *Id.*; *see also* Doc. 187-1. As a result, between 2009 and 2012, Defendants fraudulently collected more than $1,621,225.43 from Plaintiffs. Docs. 187 at 2-6; 187-1; 187-2.

On August 22, 2017, the Court granted in part Plaintiffs' motion for summary judgment (Doc. 633) against Defendants Jean Dorestant (Dorestant) and Belle Management, LLC (Belle Management). Doc. 649. The following day, the Clerk entered Judgment against Dorestant and Belle Management. Doc. 651.

---

[1] Plaintiffs also alleged that as part of the scheme, KJ Chiropractic and Wellness provided unnecessary, excessive, and unlawful treatment to individuals involved in real automobile accidents. Doc. 187 at 2.

On September 29, 2017, Plaintiffs filed a motion for attorney fees, costs, and expenses to be awarded against Defendants Dorestant and Belle Management. Doc. 654.

On November 2, 2017, the undersigned recommended that the Court grant in part Plaintiffs' motion for default judgment (Doc. 632) against Defendants Shenika Richardson, Vladimir Jean Pierre, Chanel Akins, Robert Cohen, Jean Cassamajor, Elaine Felix, Esdras Pierre Louis, Edner Desir, and Shayla Gaines (the Default Defendants). Doc. 657. The undersigned further recommended that the Court grant Plaintiffs' and Defendant Robert Thelusma's joint motion for entry of judgment (Doc. 656). *Id*. The Court adopted the undersigned's recommendations. Doc. 660.

On November 30, 2017, Plaintiffs filed a motion for attorney fees, costs, and expenses to be awarded against the Default Defendants. Doc. 658.

On December 27, 2017, the Court denied Plaintiffs motions for attorney fees, costs, and expenses to be awarded against Dorestant, Belle Management, and the Default Defendants (collectively "Defendants"). Doc. 659. The Court noted that Plaintiffs did not inform the Court how they would like the attorney fees and costs to be apportioned among Defendants, or provide the Court with any information or argument that the Court could use to determine how the Court should apportion the attorney fees and costs among the Defendants. *Id*. The Court further noted that Plaintiffs did not attach their attorneys' detailed billing records or supporting documentation necessary for the Court to rule on Plaintiffs' request for costs. *Id*. The Court thus denied Plaintiffs motions and ordered Plaintiffs to file a single motion for attorney fees that addresses the issues identified by the Court. *Id*.

On January 22, 2018, Plaintiffs filed their Motion in Support of Reasonable Attorney's Fees, Costs, and Expenses relative to GEICO's Granted Motion for Summary Judgment (*See* Doc.

649) and Default Judgment (*See* Doc. 660) (the Motion).  Doc. 663.  In the Motion, Plaintiffs ask the Court to award $1,788,517.63 in attorney fees and $56,359.81 in reasonable costs jointly and severally against Defendants.  *Id*.  To date, Defendants have not responded or objected to Plaintiffs' request.

### Discussion

#### a. Entitlement to Attorney Fees

18 U.S.C. § 1964(c) provides as follows:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. . . .

Here, Plaintiffs prevailed against Defendants under 18 U.S.C. § 1962.  *See* Docs. 649; 657; 660.  And Defendants did not object to Plaintiffs' alleged entitlement to attorney fees and costs.  Accordingly, the undersigned finds that Plaintiffs are entitled to attorney fees and costs against Defendants.

#### b. The Calculation of a Reasonable Attorney Fee

The Court uses the familiar "lodestar" method in determining a reasonable fee award, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable.  *See Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted).

In determining if the requested rate is reasonable, the Court may consider the applicable *Johnson* factors and may rely on its own knowledge and experience. *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.") (quotations and citation omitted); *see Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[2] "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299 (citations omitted). Instead, satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances or opinion evidence of reasonable rates. *Id*.

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the

---

[2] The *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Eleventh Circuit has subsequently explained that "district courts may, but are not required to, consider [the *Johnson*] factors since many 'usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 801 (11th Cir. 2012) (quoting *ADA v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006)).

time claimed for each activity." *Norman*, 836 F.2d at 1303.  Likewise, a party opposing a fee application should also submit objections and proof that are specific and reasonably precise. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).  A fee opponent's failure to explain with specificity the particular hours viewed as "unnecessary or duplicative" is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)).  "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (quotations omitted).  But in cases where the fee motion and supporting documents are voluminous, an hour-by-hour analysis by the court is not required, and the court may apply across-the-board percentage cuts in the number of hours so long as the court provides a concise but clear explanation of its reasons for the reduction.  *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).  There is a strong presumption that the lodestar figure is reasonable.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010).

    *i.   Reasonable Hourly Rates*

Here, Plaintiffs seek a rate of $175 per hour for attorney work, regardless of whether that work was performed by an associate or a partner, and $85 per hour for paralegal work.[3]  Doc. 663 at 15-16.  Plaintiffs argued that lead counsel, Smith & Brink, P.C., has more than twenty years of experience handling complex special investigation cases for insurance carriers throughout the United States, including RICO litigation arising from automobile insurance fraud schemes.  *Id.* at 23.  Plaintiffs argued that lead counsel David O. Brink has tried multiple cases involving RICO,

---

[3] The undersigned notes, based upon the number of hours worked and the amount of Plaintiffs' request for fees, that Plaintiffs effectively requested hourly rates that are lower than $175 per hour for attorney work and $85 per hour for paralegal work.  *See* Docs. 663 at 15-16 n.13; 663-3.

and that Attorney Hugh Brady has been published on the topic of the RICO statute and has over six years of experience working with large insurance based clients on fraud matters. *Id*. With respect to local counsel, Daniel Martinez and Tammy Denbo, Plaintiffs argued that Mr. Martinez has extensive trial experience, having completed over 100 civil jury trials, and that Ms. Denbo has extensive trial experience, having completed over 35 trials involving a wide range of insurance based matters. *Id*.

Plaintiffs further argued that: this was a complex RICO case involving multiple defendants, each with a separate role to perform in the fraudulent scheme; Plaintiffs' attorneys were required to analyze tens of thousands of pages of insurance claim files and complex federal statutes; Plaintiffs' attorneys were required to rebut unique arguments rarely addressed by the courts; the requested hourly rate is less than or equal to the prevailing market rate in the relevant legal community for similar services by attorneys of reasonably comparable skills, experience, and reputation; Plaintiffs' attorneys obtained a favorable result; uncovering fraud and "quelling a tide of improper conduct was/is a noble goal"; Plaintiffs have been working with Smith & Brink, P.C. for almost ten years; and courts have awarded similar fee requests in other RICO cases in which Smith & Brink, P.C. has been involved. *Id*. at 18-24; *see also* Docs. 654-1; 654-2.

Defendants have not opposed the requested rates. The undersigned, drawing on the Court's experience deciding these disputes as well as the submitted documentation and the lack of an opposition to the requested rates, finds that the requested rates are reasonable in this case.

      *ii.*      *Reasonable Number of Hours Billed*

In the Motion, Plaintiffs seek recovery for a total of 11,622.50[4] hours of attorney work and 2,851.50[5] hours of paralegal work. Docs. 663 at 16-17; 663-3; 663-5; *see also* Docs. 654-1; 654-2. Plaintiffs argued that the time spent was justified given that this was a complex RICO case involving eighteen named Defendants that lasted approximately five years, involved extensive investigation and discovery, and was aggressively litigated by some of the named Defendants. *See* Doc. 663. Plaintiffs further argued that their attorneys exercised billing judgment and that Plaintiffs removed any excessive and unnecessary hours from their request for fees.[6] *Id*. at 17. Upon review of the Motion and the attached supporting documentation, the undersigned finds Plaintiffs arguments to be well-taken, and finds that the hours claimed by Plaintiffs – none of which are objected-to by Defendants – are reasonable, with one notable exception.

On February 27, 2015, four of the named Defendants (the Bankruptcy Defendants), including Defendants Dorestant and Belle Management, filed for bankruptcy. Docs. 517; 518; 519; 520. As a result, the Court cancelled the jury trial that was scheduled for March 2, 2015, and, on March 2, 2015, administratively closed the case. Docs. 522; 527. On June 16, 2016, the Court reopened the case to consider an adversary proceeding that Plaintiffs had filed in bankruptcy court

---

[4] 11,080.80 hours of attorney work from lead counsel and 541.70 hours of attorney work from local counsel. Docs. 663-3; 663-5; *see also* Docs. 654-1; 654-2.

[5] 2,801.50 hours of paralegal work from lead counsel and 50.00 hours of paralegal work from local counsel. Docs. 663-3; 663-5; *see also* Docs. 654-1; 654-2.

[6] Plaintiffs' argument is supported by an affidavit in the record, Doc. 654-1, and further supported by the fact that Plaintiffs' request for $1,788,517.63 in attorney fees is significantly less than the request would be if Plaintiffs had multiplied the total alleged hours by the requested hourly rates (i.e., 11,622.50 * $175.00 + 2,801.50 * $85.00 = $2,272,065.00). Plaintiffs further alleged that they have actually paid to lead counsel and local counsel a total of $1,788,517.63, which is equal to the amount that Plaintiffs are requesting in attorney fees. Doc. 663 at 17.

but that the bankruptcy court had transferred to this Court because the issues in the adversary proceeding were virtually identical to the issues in instant case. *See* Docs. 540; 541; 553 at 2. The docket reflects that until about November 2016, the parties litigated only the adversary proceeding before this Court. Thus, from approximately March 2015 through October 2016, Plaintiffs were litigating the bankruptcy case, not this case.[7] Further, the undersigned notes that the billing records from this time period, with some exceptions, indicate that Plaintiffs' attorneys were primarily working on the bankruptcy case during this time period, and not on the case before this Court.[8] *See* Docs. 663-2 at 936-1101; 663-4 at 14-38.

Plaintiffs failed to provide the Court with any argument or authority to suggest that they are entitled to recover attorney fees in this Court for time spent litigating a bankruptcy case.[9] Nor did Plaintiffs provide the Court with any authority to suggest that they are even entitled to recover fees for time spent litigating a bankruptcy case. As such, the undersigned finds that Plaintiffs have failed to establish that they are entitled to fees for the time spent litigating the bankruptcy case.

---

[7] This time frame is corroborated by Plaintiffs. Doc. 663 at 14-15. To assist the Court in reviewing Plaintiffs' request for fees, Plaintiffs broke the litigation against Defendants into various stages. *Id*. at 12-15. According to Plaintiffs, the "bankruptcy stage" lasted from February 2015 through October 2016. *Id*. at 14-15. Plaintiffs argued that during this time, they were required to appear in Bankruptcy Court and lobby the court to grant relief from the automatic stay imposed by the bankruptcy filings. *Id*. Plaintiffs concluded their discussion of the "bankruptcy stage" as follows: "After significant effort by [Plaintiffs], including filing of an adversary proceeding relative to the dischargeability of certain Defendants' debts, the case was removed back to this Honorable Court." *Id*. at 15

[8] The undersigned notes the difficulty in determining which case a particular billing entry was for given the ambiguity of the billing entries and Plaintiffs' failure to separately record time for each case. *See* Docs. 663-2 at 936-1101; Doc. 663-4 at 14-38. The undersigned further notes that Plaintiffs provided nothing in the Motion to assist the Court in determining how much time was spent on the bankruptcy case as opposed to the instant case. Doc. 663.

[9] This includes the adversary proceeding, which, although it was partially litigated in this Court, was part of the bankruptcy case and not a part of the instant case.

Thus, a reduction of Plaintiffs fee request is appropriate in this instance. Based upon the Court's review of the billing records, it appears that approximately 80% of counsel's time was spent on the bankruptcy case between March 2015 and October 2016. *See* Docs. 663-2 at 936-1101; 663-4 at 14-38. Therefore, the undersigned recommends that the Court reduce Plaintiffs fee award to $1,571,692.43, which represents an 80% reduction of counsel's fees from March 2015 through October 2016.[10]

### c. The Calculation of Reasonable Costs

Plaintiffs requested costs pursuant to Federal Rule of Civil Procedure 54.[11] Doc. 663 at 4. Rule 54(d)(1) allows for an award of costs for a prevailing party unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. *See Durden v. Citicorp Trust Bank, FSB*, No. 3:07-cv-974-J-34JRK, 2010 WL 2105921, at *1 (M.D. Fla. Apr. 26, 2010) (stating that Rule 54 establishes a presumption that costs should be awarded unless the district court decides otherwise (citing *Chapman v. Al Transp.*, 229 F.3d 1012, 1038 (11th Cir. 2000))).

---

[10] $1,788,517.63 – (0.80 * ($46,404.00 + $22,752.50 + $22,560.00 + $6,284.50 + $5,072.50 + $7,567.50 + $20,413.00 + $15,541.50 + $12,464.00 + $11,152.00 + $5,904.00 + $2,270.00 + $6,120.00 + $13,951.50 + $17,815.00 + $8,276.00 + $11,421.50 + $4,384.50 + $2,957.50 + $752.50 + $3,727.50 + $17.50 + $1,225.00 + $1,592.50 + $262.50 + $437.50 + $140.00 + $70.00 + $262.50 + $2,152.50 + $16,940.00 + $140.00)) = $1,571,692.43. *See* Docs. 663-2 at 960-61, 975-76, 990, 999, 1005, 1012, 1025, 1040, 1048, 1054-55, 1058-59, 1061-62, 1068, 1078-79, 1088, 1093, 1098, 1101; 663-4 at 15, 17, 20-21, 23-24, 26, 28-29, 31-33, 37, 38.

[11] The undersigned notes that Plaintiffs stated as follows in the introduction: "[Plaintiffs] respectfully request . . . that this Honorable Court award reasonable attorney's fees in the amount of $1,788,517.63, and reasonable costs in the amount of $56,359.81, pursuant to 18 U.S.C. § 1964(c) and based upon violations of 18 U.S.C. § 1961 et seq. . . ." Doc. 663 at 1. But in their legal memorandum, although Plaintiffs noted that section 1964(c) entitles them to costs, Plaintiffs sought costs pursuant to Rule 54. *Id*. at 3-4. Plaintiffs provided no legal memorandum regarding the nature of the costs that are provided for under section 1964(c) or how those costs may differ from the costs allowed for under Rule 54.

Here, Plaintiffs are the prevailing parties in this case and are entitled to costs under Rule 54(d). *See Powell v. Carey Int'l, Inc.*, 548 F. Supp. 2d 1351, 1356 (S.D. Fla. 2008) (stating that a prevailing party is one who "prevailed on 'any significant issue in the litigation which achieved some of the benefit the parties sought in bringing suit.'" (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 79 1 (1989))). "[A] court may only tax costs as authorized by statute." *EEOC v. W & O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000). Thus, a district court may not award costs under Rule 54 "in excess of those permitted by Congress under 28 U.S.C. § 1920." *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)). Section 1920 specifies which costs are recoverable, and provides as follows:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1)   Fees of the clerk and marshal;
>
> (2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3)   Fees and disbursements for printing and witnesses;
>
> (4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5)   Docket fees under section 1923 of this title;
>
> (6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. The party seeking an award of costs or expenses bears the burden of submitting a request that enables a court to determine what costs or expenses were incurred by the party and the party's entitlement to an award of those costs or expenses. *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994).

Here, Plaintiffs are seeking $56,359.81 in costs. Plaintiffs provided sufficient documentation to support the amount of their request, and Defendants have not objected. *See* 663-7; 663-8. But Plaintiffs request for reimbursement includes a request for expert witness fees in the amount of $40,725.00. Expert witness fees are not recoverable under § 1920. *Duckworth*, 97 F.3d at 1399 (stating that expert witness fees are "clearly nonrecoverable" under § 1920). And Plaintiffs provided no argument or authority whatsoever to suggest that these costs are somehow recoverable in this case. *See Catz v. Alternative Home Fin., Inc.*, 2:04-cv-356-FTM-34DNF, 2007 WL 4285355, at *6 (M.D. Fla. Nov. 30, 2007) (determining costs recoverable under §1964(c) to be those allowed pursuant to § 1920); *Functional Prod. Trading, S.A. v. JITC, LLC*, 2014 WL 3749213, at *9 (N.D. Ga. July 29, 2014) (same). As such, the undersigned recommends that the request for expert fees be denied and that Plaintiffs be awarded $15,634.81 in costs.[12]

### d. Apportionment of Fees and Costs

The district court has wide discretion as to when to apportion fees and how to divide liability, and in exercising that discretion should try to achieve the most fair and sensible solution possible. *See United States v. Patrol Servs., Inc.*, 202 F. App'x 357, 362 (11th Cir. 2006) (citing *Council for Periodical Distrib. Ass'ns. v. Evans*, 827 F.2d 1483, 1487-88 (11th Cir. 1987)).

Here, Plaintiffs argued that the Court should apportion fees and costs jointly and severally among Defendants. Doc. 663 at 6-11. Plaintiffs argued that this is the most sensible solution given that "RICO actors are inherently 'joint tortfeasors' and proving such interconnectedness is a large part of a RICO plaintiff's burden." *Id.* at 6 (citing *Lawrence Holdings, Inc. v. ASA Int'l, Ltd.*, 2014 U.S. Dist. Lexis 154246, *40-41 (M.D. Fla. Oct. 30, 2014) (citation omitted)). Plaintiffs further

---

[12] $56,359.81 - $40,725.00 = $15,634.81

argued that all of the fees incurred by Plaintiffs arose out of Defendants' underlying conspiratorial conduct, and that all conspirators in a RICO action are liable for the acts of their co-conspirators. *Id*. at 6-11. Plaintiffs argued that awarding fees and costs jointly and severally would not only be more efficient, but is also consistent with the purpose of the applicable statute. *Id*. at 9.

Given that Defendants have not objected to apportioning fees and costs jointly and severally among them, or provided the Court with any alternative solution that is more fair or sensible than what has been proposed by Plaintiffs, the undersigned finds that the most fair and sensible solution is to award Plaintiffs' fees and costs jointly and severally against Defendants.

**Conclusion**

Accordingly, for all of the foregoing reasons, the undersigned respectfully **RECOMMENDS** that:

1. The Motion (Doc. 663) be **GRANTED in part** as follows:

    a. The Court award Plaintiffs a total of **$1,571,692.43** in attorney fees jointly and severally against Defendants Jean Dorestant, Belle Management, LLC, Shenika Richardson, Vladimir Jean Pierre, Chanel Akins, Robert Cohen, Jean Cassamajor, Elaine Felix, Esdras Pierre Louis, Edner Desir, and Shayla Gaines; and

    b. The Court award Plaintiffs a total of **$15,634.81** in costs jointly and severally against Defendants Jean Dorestant, Belle Management, LLC, Shenika Richardson, Vladimir Jean Pierre, Chanel Akins, Robert Cohen, Jean Cassamajor, Elaine Felix, Esdras Pierre Louis, Edner Desir, and Shayla Gaines;

2. The Motion (Doc. 663) otherwise be **DENIED**.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on April 5, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy